Good morning, Your Honors. My name is Glenn Cantor. My co-counsel here is Elizabeth Green. We represent the appellants in this manner. I'd like to reserve three minutes for rebuttal. I'd like to start by answering what I suspect is the first question this panel is going to ask me, which is, where is the clear error? And I'd like to answer that question by taking 21 of our plaintiffs as a group and explain what happened to them. I don't think I need to individualize them as a group. Let me maybe preempt what you're about to do, because it seems to me you're getting to the second question. The first question would be, did the district court err in selecting the standard of review for its decision? That was not where I was going, Your Honor, but I get there. Frankly, it seems to me if the district court is correct that the court was to apply an abuse of discretion standard, then, and you're not questioning that, then I want to make that clear now, because it seems to me that that's a very important question, because after that, if we get to the abuse of discretion standard, then if you're not going to give me some case law or something that suggests that the trustees were wrong in the discretion that they used in making the determination they did, you're going to lose, because if they have an abuse of discretion standard that they use, and all I'm trying to do is see if they did it right, then I think that's a pretty important decision for us to make here. Absolutely, Your Honor. I was going to get there, but I think the simple answer to that is before 2013, these claims were administered by Connecticut General. That doesn't answer the question. Okay, Your Honor. You're trying to argue the facts, and I can understand you want to get to the facts, but frankly, the facts only come up after I determine what standard I have to review this under. Okay, Your Honor, the standard review is abuse of discretion. All right, then I'm not going to worry. If it's abuse of discretion period, I mean, I got from your brief, okay. Not period. All right, go on. Why isn't it? It's not full abuse of discretion. The language of the plan affords the trustees abuse of discretion, but the Supreme Court has made very clear that discretion can be reduced, the deference can be greatly reduced if there's a showing of bias or conflict. Here, before 2013, the claims were administered on a fee-for-service basis. After that, they hired... Well, that's just that you're arguing inconsistent application of the plan's provisions? No. What I'm arguing is that the new administrator was being paid on a contingent basis to find a basis to deny claims. So is that a reason for a heightened standard of review? Your Honor, how could it not be? It's like the home team in a baseball game getting to hire the umpires and say, we're going to pay you a flat fee, but if you make calls that are close in our favor, we'll give you a bonus. Well, but just a minute. If you're right that Change Healthcare has a conflict, that may be, but Change Healthcare didn't make the decision. No, they didn't. In fact, Zenith made the decision. They didn't really make a decision either. They gave a recommendation to the trustees and the trustees made the decision. So there is no conflict with the trustees. Well, I would respectfully disagree. Why? Because the trustees rubber-stamped every single claim that came before them from my clients. Every single one.  All you're saying, you're using your best argument, and I'm frank, in front of a jury, you might be very good. But the honest truth is, I'm looking at the facts as to what happened here. Change Healthcare, you're the ones who say, they're the ones who say they have a conflict. They make a recommendation to Zenith. Zenith makes a recommendation to the trustees, and the trustees make the decision. I don't see any conflict with the trustees. They're just taking the decision of somebody who gave them the recommendation, and they're making their own determination. Further, the arbitrator came out the same way. He didn't have a conflict. Your Honor, I'm going to respectfully disagree. Now, how did the arbitrator have a conflict? He was again looking at abuse of discretion. The arbitrator works the union, he's the only arbitrator, he's used again and again and again. But if I can stop and pivot, giving them full abuse of discretion, they've violated it. All right, let's see why. That's where I think you are. Okay. But I want you to think about it. If they have an abuse of discretion standard, then I owe the trustees some deference under the plan. Fine. And it's not my duty to make the determination. It's my duty to determine if the trustees abused their discretion. You agree? I agree. All right. Now tell me what there is. Well, the law is clear that they don't have unfettered right to say whatever they want. They have to have more than the scintilla evidence, not preponderance, but they have to have substantial evidence. The decision they made was you are not an ambulatory surgery center. Now, they came to that conclusion primarily based on an email, which is at ER-198. But they only quote from half of it. It's an email that says, first of all, this agency, which is the Accreditation Association for Ambulatory Healthcare. I can read it. It's at ER-1798. As discussed, your organization is accredited by AAHC as an office-based surgery procedure center, period. Since the state of California does not have specific definitions for an office-based surgery center versus an ambulatory surgery center, AAHC has classified you as this due to having four or less providers and two or less operating procedure rooms. The last sentence, and this is key. This is mainly for survey scoping purposes. Please note, the standards of accreditation as an OBS or an ASC, ambulatory surgery center, are the exact same. Now, I have another document, which I think is the key document of the case, which demonstrates both the error of the arbitrator and the court. Let me stop you just a minute. You're going to cite the evidence that you think supports where you're going. But on our abuse of discretion standard, even though I might agree with you myself, having looked at this evidence, I cannot overturn the trustee's decision in that regard. I can only overturn the trustee's discretion when they have no evidence to sustain what they did. They have no, well, you can put the standard where you want it. I put no because I want it to be pretty high. But I think it is high. It's an abuse of discretion. The evidence is that this was primarily operated as a doctor's office. No. Yes.  Well. With all due respect, no. Gaddami primarily bills for professional fees and has his high-volume office visits. The doctor says when the surgery is not scheduled, the pre-op is used by him to see the patients. The address is the same for the center as for request for pre-authorization. For Blue Shield health insurance claims forms, for prescription forms. This is the evidence that was assembled here to suggest that this is not primarily for the surgical procedures, but primarily just a general practice of medicine or dentistry. Now, all I'm trying to do is say to you, that's the evidence in the record. And now me, I may not want to be there. How do I get around it on an abuse of discretion standard? Because the evidence is completely contradictory. If the court looks at ER 1223, which is the accreditation by the entity, it clearly says from 2002. You're talking about the license and the accreditation. I'm talking about, it says ambulatory surgical facility if, number one, it's operated primarily for the purpose of performing surgical procedures. Two, it has a doctor and registered nurse in attendance. And three, it's not an office maintained by a physician for the general practice. You have to meet all three of those. And all I'm saying is, I looked at those. I don't want to get into licensed and non-licensed because frankly, I don't really know for sure. But I can see all kinds of evidence that this facility does not meet the qualifications that are outlined in one, two, and three. Your Honor, if that were the case, wouldn't you expect the district court to have issued such a ruling? The conclusions of law. Well, the district court went for the APMC is in fact an ambulatory surgical facility. That's where they went. They didn't talk about anything else. The district court said the facility is not accredited as an ambulatory surgery center. That's as far as she went. She didn't discuss the other factors. I'm not affirming the district court here. I am looking to Novo, as the district court should, to see if the trustees perform this discretionary function in a reasonable manner. That's my job. That was the district court's job. That's what we're supposed to do. But the district court didn't do it. And for this court to say that there's more than a scintilla of evidence because they say so when the facts suggest otherwise. There is no reason for this facility to exist other than for the primary purpose of performing surgical procedures. The fact that they say, well, yes, he has an office that is, it's really the pre-op facility that he uses to talk to patients when it's not being used as a pre-op. I mean, your honor, yes, if you and this panel or the district court want to find something they can hang their hat on to say basically. I'm not trying to hang my hat. I'm trying to see if the trustees abused their discretion. That's all I'm trying to do. And what I'm saying, your honor, is it's not unfettered. It has to be rational. And it's not rational here that a facility that does nothing but perform procedures is not primarily for the purpose of performing these procedures. And you talk about the general practice of medicine. The man that runs this procedure is a board-certified anesthesiologist. That's not the general practice of medicine. The evidence in this record shows all he does is see patients. And if he decides it's appropriate, performs procedural, surgical procedural things. There is no evidence to suggest otherwise. Don't even disagree with all of what you're arguing there. All I'm trying to say is I am controlled by a Beatty or a Batty. I don't know how to say it. And I know it's a Beatty. And in a Beatty, it says what abuse discretion means is that the trustees have the power to interpret plan terms and make final benefit determinations. They have the power to resolve ambiguities, inconsistencies, and omissions. They have the power to decide on questions concerning the plan and the eligibility. They have full, final, conclusive, and binding power to construe and interpret the policy under the plan. That's what a Beatty tells me abuse of discretion means. So I look at that and then I say the plan doesn't even define what ambulatory center is. The plan does not even define the kind of things that you're arguing. And then these guys have this kind of discretion and I'm supposed to undo it? Your Honor, the plan does define it. Well, but. It says there must be a doctor or nurse when the procedures are there. Nobody can test that. It says it's not there for the general purpose of practice of medicine. That's a definition that clearly is met. It is not there for the general practice of medicine and it's there for the primary purpose of performing surgical procedures. They never identify any basis as to why those factors aren't met other than the arbitrator coming up with something from ProPublica, which is not part of the record. Which in fact, if you look at the numbers he cites, says there's no reason for this procedure, I'm sorry, for this facility to exist but for the primary purpose of performing surgical procedures. So I agree with you, Your Honor. They have a high level of deference. We could sit here for hours and discuss the appropriateness of that deference, but it exists. But they don't get unfettered discretion. There has to be a rational basis. This decision was irrational. To call this anything but an ambulatory surgery center that exists to perform surgeries. Your Honor, to use a personal example, many years ago, I had a vasectomy. I went into my urologist's office and he put me in a room and he did it. He would have seen me for a variety of other things. That is not a surgery center. He does all kinds of things there. This facility does nothing but perform surgeries. Yes, the doctor may meet with the patient before and may meet with the patient after to discuss their surgeries. He's not doing anything else but surgeries. So once again, this all goes back to deference and it's not unfettered. It's not, you can do whatever you want because you've got discretionary language. It has to be rational and giving them the highest level of deference. I would say this is an irrational decision. They keep basing it on office space. This plan does not discuss office space. I see my time is up. I appreciate your answer to my questions. Thank you. Thank you, Your Honor. I will give you time for rebuttal. Thank you, Your Honor. Good morning and may it please the Court. Before I address the legal issues that have been raised by the appellees, I'd like to briefly discuss the background of the case, which I think is relevant to many of the Court's questions. First of all, unlike many cases that come before this Court dealing with medical benefits, the benefits at issue in this case are paid from a trust subject to a collectively bargained plan and the plan is administered by a board of trustees that's equally divided union and management, so representatives of the employees who are covered and representatives of the employers who are responsible for paying the benefits. Those trustees have a fiduciary obligation and an obligation under the plan to make sure that only covered expenses are paid from plan assets and that the expenses paid are reasonable. The claims at issue here are facility fee claims. There's no longer an issue in this case about procedure or office visit fees, professional fees. They're facility fee claims. Facility fees are something that are charged by sophisticated facilities to cover overhead and under this plan, facility fees are only payable if the entity is a hospital. So you have a definition of hospital in the plan that does not seem particularly well tailored to the current regulatory regime in California. So just like starting with the first word or first word after the article is licensed, but as I understand it, the state doesn't really have its own licensing regime anymore. It simply relies on the third party accrediting agencies. Is that right? That's correct as to the current status. When the plan documents that are at issue here in this case were drafted, the summary plan description was drafted, the prior regime existed where the California Department of Public Health licensed both independently owned and physician owned facilities. Right, but that regime changed and the plan says something else. It's still, well, at the time this case arose, the plan language was the same. Right, the plan, but I mean the licensing regime changed and the plan's language did not. It did not as relevant to this case. And to be, you have not made the argument that the state no longer licenses these facilities, so therefore they're not licensed. Well, we did, but I think that you don't even have to get to that point because if you look at, if you were to simply import the licensing standard from CDPH over to the analysis under the medical board, CDPH licenses ambulatory surgery centers applying Medicare standards. There's no dispute that APTMC, Dr. Gaddini's office met Medicare standards. So even if you just said we're going to apply the same test, whether you call it licensing or accrediting, they wouldn't pass it. Here the trustees also found that they were not. They are, but they are accredited. Right, they're accredited as office based rather than ambulatory, but by an accreditor that doesn't seem to think there's any real difference between those two things. But it did accredit them. I understand that you're referring to the email backs. Right. There's no distinction, yes, and that's in the record. But also in the record is the evidence that they were, in fact, accredited only as an office based surgery center. That makes an important difference in the case, in this case, because of the definition in the plan of hospital. One of the elements of which is that it not be a doctor's office. But is it arbitrary when there's both pieces in the record that the accreditor is saying there's no difference between the two? Is it arbitrary to just pick the one that requires you to make less reimbursements? No, it's not, and that's not what the trustees did in this case in any event. The evidence before the trustees encompassed not just the question of whether APTMC was quote unquote licensed as an ambulatory surgery center, but also whether there was a doctor and a registered nurse in attendance at all times patients were present. That's what the definition says. There was no evidence on that. Okay, but the district court opinion, which we're reviewing, didn't go there. The district court just said it wasn't an ambulatory, whatever the word is, ambulatory surgical facility, and it didn't go through all of the other things, the remaining parts of the definition. That's correct, but this court can affirm based on any reason that's evident from the record, and here, as Judge Smith noted, we are addressing essentially on a de novo standard if the abuse of discretion standard applies, whether the court analysis below is correct. I mean, we can affirm on any basis in the record, but there's a fairly limited record on those other, that issue that Judge Wardlaw mentioned in the office maintained by a physician for general practice, you know, they didn't, wasn't briefed here. I mean, you raised it in your brief, but, you know, we haven't had a full round of briefing on it, so wouldn't, I mean, your first line argument is that we should affirm the district court on the reasoning that it gave, but if we don't, wouldn't it make more sense to let the district court, you know, look at the record? Well, we know what the district court would do because the judge said what she would do. She indicated that she independently reviewed the record, discussed the arbitrator's findings, which addressed these specific issues, and said independently, even if I applied a de novo standard or review, I would reach the conclusion that this facility did not meet the definition of the plan, so I don't think there's any utility in sending the case back. We know what the outcome would be. This is not a case where, if we were in the reverse situation where the district court applied a de novo standard and we don't know whether or not the court thinks the decision was reasonable, if not correct. This is a situation where we know the district court said, I've looked at the record. I've reviewed the 80,000 pages that's been generated here, and I've found that independently, this facility does not meet the definition of hospital. But that was because of the first part of the definition, right? It didn't go through the other parts of the definition, the office maintained for general practice and so forth. Not in the conclusions of law, it does discuss those in the facts, and I take the court to be saying that looking at all the facts as I've found in my decision, this facility doesn't meet the hospital definition in the plan. Counselor, did the district court really need to make its own determination about what it did in this particular situation? It seems to me that if this is an abuse of discretion standard, the district court didn't need to make that determination. They just need to determine if the determination of the trustees was an abuse. I agree. And therefore, the district court was doing, to some extent, a de novo review of what the trustees were empowered to do. And what instead the district court should have been doing was seeing if the trustees had abused their discretion in coming to the decision they came to. I agree. The district court could have done less to reach this conclusion because under the abuse of discretion standard, the only question really is whether the trustees' decision, which had been affirmed by the arbitrator after evidentiary hearings, was a reasonable decision, not whether it was right or wrong, whether it was reasonable. Well, whether it met the abuse of discretion standard. Right. Which essentially boils down to... Reasonable is a good word, but it isn't necessarily the abuse of discretion. It could be unreasonable and still not be an abuse of discretion, but I'll distill it down to reasonable. And in your view, does that extend, you know, the scope of discretion conferred by the abuse of discretion standard extend to both the interpretation or the assessment of the facts and also to the interpretation of the plan language? Absolutely both. The plan is explicit in saying that the trustees are the entity that interprets the plan. And that's really the key question here. The facts, there's not a lot of dispute about what the underlying facts were. There's some arguments about what they mean in this context. The case is about the interpretation of that definition of hospital that's in the plan. And that's something that's reserved exclusively for the trustees. And in this case, unlike, you know, many cases that come before this court, not only did you have the trustees making a decision, but after the trustees rendered their decision, many but not all of the participants appealed to the arbitrator who heard evidence, in many cases testimony from witnesses, including Dr. Kadimi, and had the opportunity to fully assess this independently and with no bias at all that's been established in the record, not even an argument of bias. And he rendered the same decision taking essentially a de novo look at what the trustees had done. And what, I mean, this is, I think I asked something pretty close to this and maybe Judge Wardlaw did, but I just want to give you another chance to explain why, when we have a definition that contemplates, that was written in contemplation of a state licensing regime, we now have this other accrediting body that, and the accreditor uses a particular word that it says expressly doesn't have any significance to it. Why does it make sense for the application of the definition to turn on which word the accreditor uses when the accreditor doesn't care about the distinction? Well, I think in this instance it matters because it's the trustees' decision that's being evaluated. Their decision has to be reasonable based on what was in front of them. They interpreted the information from the AAAHC as being this facility could, had it been a different facility, it could have been accredited as an ambulatory surgery center. But on the facts of what this facility was, it was not. It was accredited as an office-based surgery slash procedure center. And that accreditation was not sufficient in the view of the trustees to meet element one of the definition. Right, but I mean, but that's, I think that's just a restatement of what their conclusion was, not so much a reason for it. I mean, the accreditor is saying that the standards are the same. You know, as I understand it, an ambulatory center means one where people come in on an outpatient basis. That's also what an office-based center is. So why does it make sense to treat them differently? Well, the plan is intending to cover for, when it covers ambulatory surgery centers, truly freestanding surgery centers where, you know, somebody would be seen by a doctor at a different facility, worked up for whether they're going to have a procedure, and then they go to the ambulatory surgery center to have the procedure. The way that AAAHC accredited Dr. Ghadimi's office indicates that it is nothing like that because their distinction between why they didn't give it the ASC designation and instead gave it the OBS designation was that it had two or fewer providers. We know it had one who operated his medical practice there and did some procedures there. And so I think looking at this in totality, that distinction that the trustees drew here makes a lot of sense. It's not simply arbitrary because it would be different if we were talking about a facility that was truly freestanding, independent, used only for procedures. That's not this facility. And so the distinction in treatment by the AAAHC is actually consonant with what the plan says and what the trustees concluded. Questions? I have no other questions. Okay. Okay. Thank you. Thank you. Counsel, your client. Oh, no, okay. I'm sorry, Your Honor. I would implore the court to look at two pieces of the record, two individual pieces. One is ER 1798, which is an email. It talks about the two different types. But then look at ER 1223, which is the actual accreditation that calls it an ambulatory surgery center. So the, this is cherry picking at best. They're looking for a reason not to find this to be qualified under the plan. There's all this discussion about office-based. Office-based is not part of the plan. There are four criteria. The word office-based never appears. Quickly, Mr. Morrison talked about the fact that Judge Marshall said, well, I would do the same thing under DeNovo. In the Willoughby case, which happened to be my case, Judge Marshall said on a short-term disability plan, if it's DeNovo, it is DeNovo, and plaintiff wins. Should, if it was arbitrary and capricious, plaintiff would still win. This court said, no, you've got to go look at it again. And amazingly, the second time around, she did say the plaintiff loses under arbitrary and capricious. So the fact that she throws it aside of, I'd do the same thing DeNovo, is meaningless. And another thing that I think I respond to quickly. What exactly is ER1223? I have it in front of me. It does say setting type ambulatory surgery center. Who, this is? This is the same accreditation organization that sent the email. Okay. And it says, it was accredited. The only one. It's the only real accreditation. Yes. Okay. It's the same entity, and it's the only accreditation, but they do say ambulatory surgery center. The email is an offhand comment about two operating rooms versus four. So for survey purposes, they call it differently. I would agree with Mr. Morrison. There are facilities that might perform a surgery here and there that are not qualified. This facility does nothing but perform surgeries. It exists for one reason, to perform surgeries. For anybody to say it doesn't primarily exist to perform surgeries, yes, they get deference, but it's irrational to say that it's just there for the general practice of medicine. And if something, forget reasonable or unreasonable, I think we can agree that irrational is an abuse of discretion. Thank you, Joanne. All right, thank you, counsel. Delgado versus ILWPMA welfare plan is submitted.
judges: WARDLAW, SMITH, MILLER